Submitted on record and briefs September 25, vacated and remanded on appeal;
cross-appeal dismissed as moot November 25, 1998

Nick SHEVCHYNSKI
and P.M. Newman, Trustee,
*Respondents - Cross-Appellants,*

*v.*

CITY OF EUGENE,
a municipal corporation;
and James W. Spickerman,
James W. Spickerman, P.C., and
Hammons Mills & Spickerman
in their capacity as hearings officers for
the City of Eugene,
*Appellants - Cross-Respondents.*

(16 94 04823; CA A88899)

970 P2d 237

Arden J. Olson and Harrang Long Gary Rudnick filed the brief for appellants - cross-respondents. With them on the answering brief on cross-appeal were Jerome Lidz and Karla Alderman, Certified Law Student.

Philip M. Newman and Nick Shevchynski filed the briefs *pro se.*

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendants appeal from a judgment in a writ of review proceeding that set aside an order of the City of Eugene that enforced the city's land use code against petitioners. The court concluded that the city had not adequately conducted the administrative hearings at which petitioner Shevchynski was found liable for violating the code. Petitioners cross-appeal, contending that the trial court erred when it granted defendants' objections to petitioners' cost bill without conducting a hearing.

The record before us reveals the following facts: In 1981, petitioner Shevchynski contracted to purchase property located at 2445 Skyline Drive in Eugene. At some point after entering into the land-sale contract, Shevchynski transferred his interest in the property to a trust for which petitioner Newman was the trustee. In September 1993, the City of Eugene Department of Planning and Development—Building and Permit Services (Department) received complaints that Shevchynski was violating various land use regulations.[1] The Department investigated and concluded that Shevchynski had violated Eugene Code sections 6.010, 6.500(1) and 9.544(d)2.c.[2] On or about September 28, 1993, the Department sent Shevchynski a notice that a complaint had been filed and that the complaint could be resolved through mediation. Mediation did not take place, and the complaint was returned to the city for enforcement on October 13, 1993.[3] On October 22, 1993, the Department sent an

---

[1] The Department had received similar complaints in 1989, 1991, 1992 and early 1993. In those cases in which the Department determined that there were violations, it notified Shevchynski. Apparently, those violations were corrected before any administrative enforcement action was taken.

[2] There is some confusion in the record as to Eugene Code section 6.500(1). In a Notice of Civil Penalty that was sent to Shevchynski on November 18, 1993, the section is referred to as 6.500(1). At the first hearing on Shevchynski's appeal of the penalty, the hearings officer referred to the section as 6.500(1). In his decision and findings on the appeal, however, the officer indicated that the pertinent section is 6.800(1). Throughout the process, the section is more often referred to as 6.500(1) than as 6.800(1), but when the section itself has been reproduced in the record, it has been numbered as 6.800(1). It is not clear whether the confusion is due to a transcription error or whether the section was renumbered at some time during the process. As Shevchynski notes in this appeal, there appears to be no current section 6.500(1).

[3] There is some dispute whether Shevchynski responded to the mediation offer in a timely manner and whether the complaint should have been returned to the

Order to Correct to petitioners, as well as to Sharlee C. Wood, who was listed as the legal owner of the property.[4] In the order, the Department described the violations as

"an accumulation of containers, debris, trash, litter, and other refuse matter which is unsightly; the storage of used building supplies, scrap, junk, wood scraps in a manner which is visible from the street; [and] the parking of vehicles not in daily use in the front yard setback for more than 48 hours."

The deadline for petitioners to comply with the order was November 12, 1993. On November 18, 1993, the Department sent petitioners a Notice of Civil Penalty, advising them that as of that date the Department would assess a daily penalty until the violations were corrected. On December 28, 1993, the Department sent Shevchynski a notice that it was discontinuing the daily penalty in order to give him the opportunity to correct the violations. On March 18, 1994, a hearing on petitioners' appeal of the staff decision to impose the civil penalty was held by Hearings Officer James Spickerman, after which Spickerman issued a decision and findings in which he determined that Shevchynski and Newman, but not Wood, were responsible for the violations to the extent that the violations had occurred. Spickerman then imposed a penalty of $100 a day for the period of November 18, 1993, to December 28, 1993, for a total of $4,000.

On May 17, 1994, petitioners filed a petition in the Lane County Circuit Court, asking the court to issue a writ of review to the defendants, commanding them to return the writ with a certified copy of the record in the enforcement proceeding. Although it is difficult to ascertain petitioners' precise arguments supporting their petition, it appears that the chief alleged flaw in the city's March 18 hearing was that a large portion of it, between one-and-one-half to three hours, depending upon which filing one reads, was not recorded. The unrecorded portion apparently contained the evidence presented by petitioners.

city for enforcement. Those disputes are not at issue in the present appeal and we do not address them.

[4] Department later dropped Wood from the enforcement action because she did not have an interest in the property under which she could be held liable for the alleged land use violations. Neither party disputes that decision.

On May 3, 1994, petitioners filed an amended petition, with minor changes. On July 18, 1994, defendants filed a memorandum in opposition to the petition, contending that the petition was not proper because it: (1) had not been signed by petitioner Newman; (2) had not been verified by the certificate of an attorney, as required by ORS 34.030; (3) did not with "convenient certainty" describe any failure of the administrative procedure; and (4) was not accompanied by the $100 surety required by ORS 34.050. On July 20, petitioners filed a second amended petition, which was signed by Newman but which lacked the attorney certification required by ORS 34.030. On July 21, 1994, the trial court allowed defendants' objections to the first and second amended petitions and ruled that a writ of review would not issue in response to the second amended petition. The court further ruled, however, that petitioners had 30 days to file a third amended petition. Petitioners filed the third amended petition on August 18, 1994. Throughout the period that petitioners were filing their amended petitions and related documents,[5] defendants challenged the trial court's jurisdiction over the matter because petitioners were not adhering to the statutory requirements for obtaining a writ of review.

On December 2, 1994, without issuing a writ of review, the trial court remanded the administrative proceeding back to the city with directions to hold a new hearing within 30 days. The court further ordered that, if the new hearing was not held within 45 days, then defendants were required to cancel and set aside all charges and penalties against petitioners. Although the city disputed the trial court's jurisdiction over the matter, it held a new hearing on December 12, 1994. Petitioners were sent notice of the hearing but did not attend it. The city held another hearing on January 12, 1995, at which Shevchynski was present but refused to participate. Newman had not been sent notice of the January hearing because the hearings officer had determined that Newman no longer had a relevant interest in the property. Following the January hearing, the hearings officer issued a decision and findings in which he concluded that

---

[5] Petitioners filed an ORCP 45 request for admissions and an ORCP 36 discovery motion. Neither of those is at issue here.

Shevchynski was solely responsible for the violations, and reimposed the $4,000 penalty.

■ At a hearing on March 17, 1995, the trial court concluded that neither the December 12, 1994, hearing nor the January 12, 1995, hearing satisfied the December 2, 1994, court order. Accordingly, the court set aside the penalty against Shevchynski. On appeal, defendants argue that the trial court erred for a number of reasons. Because it is dispositive, we address only defendants' argument that the court did not have the authority to set aside the city's order because the court never issued a writ of review, as required by ORS 34.060 and ORS 34.080.

■ Defendants frame the issue of the court's failure to issue a writ of review as jurisdictional, relying on our decision in *N.W. Env. Def. Center v. City Council*, 20 Or App 234, 531 P2d 284 (1975). In that case, we held that the court lacked jurisdiction of a writ of review proceeding because Portland General Electric, an opposing party in the challenged administrative proceeding, had not been served with a copy of the writ of review. *See* ORS 34.080. We concluded that the petitioners' failure to comply with the statutory service requirement was a "jurisdictional defect." Our labeling of the defect as jurisdictional springs from the nature of a writ of review. As we noted in *Shipp v. Multnomah County*, 133 Or App 583, 589, 891 P2d 1345, *rev den* 321 Or 246 (1995), "[t]he writ of review process is *sui generis*." It is a creature of statute, and the trial court has authority to act only when the statutory requirements have been met. In *Shipp*, the petitioners failed to meet the requirement that the petition for a writ of review be filed within 60 days of the challenged administrative decision. *Shipp*, 133 Or App at 590; *see* ORS 34.030. In *N.W. Env. Def. Center*, the petitioners failed to meet the requirement that a copy of the writ be served on an opposing party. *N.W. Env. Def. Center*, 20 Or App at 241; *see* ORS 34.080. In other words, "jurisdiction," as it has been used in those cases, refers simply to the trial court's authority to proceed with the review process. If the statutory requirements for a writ of review are not met, the trial court lacks authority to review the matter that the writ of review proceeding seeks to review.

ORS 34.060 provides:

"*The writ shall be directed to the court, officer, or tribunal whose decision or determination is sought to be reviewed,* or to the clerk or other person having the custody of its records or proceedings, requiring return of the writ to the circuit court, with a certified copy of the record or proceedings in question annexed thereto, so that the same may be reviewed by the circuit court. *The court allowing the writ* shall fix the date on which it is to be returned, and such date shall be specified in the writ."

(Emphasis added.)

■ ORS 34.080 provides:

"*Upon the filing of the order allowing the writ,* and the petition and undertaking of the plaintiff, the clerk shall issue the writ, *as ordered.* The writ shall be served by delivering the original, according to the direction thereof, and may be served by any person authorized to serve a summons. A certified copy of the writ shall be served by delivery to the opposite party in the suit or proceeding sought to be reviewed, at least ten days before the return of the original writ."

(Emphasis added.) The text of the statutes clearly contemplates that, before a court may review a proceeding pursuant to a writ of review, the court *must first* issue the writ. Otherwise, there simply is no action before the court to be reviewed. Because the trial court failed to issue the proper order in this case, no writ of review was issued or served. As a consequence, the court had no authority to order defendants to conduct a new hearing or to set aside the city's administrative decision. Accordingly, we vacate the trial court's judgment and remand for issuance of a writ of review if the statutory requirements to issue it are met. Because of our disposition of the appeal, petitioners' cross-appeal on the trial court's award of costs is moot.

Vacated and remanded on appeal; cross-appeal dismissed as moot.